UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MONA MOURSI,

                        Plaintiff,         **REPORT AND**
                                          **RECOMMENDATION**
       -against-                       10 CV 4169 (KAM)

MISSION ESSENTIAL PERSONNEL
and REX MORFORD,

                        Defendants.
----------------------------------------------------------X

        On December 23, 2010, plaintiff Mona Moursi filed an Amended Complaint against defendants Mission Essential Personnel ("MEP") and Rex Morford, alleging quid pro quo sexual harassment, hostile work environment, gender discrimination, religious discrimination, and retaliation under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296 et seq., the Georgia Fair Employment Practices Act, Ga. Code § 45-19-29, and Ohio Law, Ohio Rev. Code § 4112.02. Jurisdiction in this Court is predicated on diversity of citizenship, 28 U.S.C. § 1332.

        On March 21, 2011, defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Sixth through Tenth Causes of Action in the Complaint on the grounds that the Georgia statute relied upon by plaintiff in bringing those claims applies only to public sector employees alleging discrimination against the State of Georgia and does not provide a private right of action. Defendant Morford also moves to dismiss the entire Amended Complaint as it pertains to him, pursuant to Fed. R. Civ. P. 12(b)(2) and (5), on the grounds that he was never properly served with the Amended Complaint and plaintiff cannot establish personal jurisdiction over

him.

On October 11, 2011, the motions to dismiss were referred to the undersigned to prepare a Report and Recommendation. For the reasons set forth below, it is respectfully recommended that defendants' motions be granted.

## FACTUAL BACKGROUND

Plaintiff alleges that she is a Muslim female, residing at 687 86th Street, Brooklyn, N.Y. (Am. Compl.[1] ¶ 2). Defendant MEP maintains an office in New York and conducts business in New York, including the solicitation of employees and advertising. (Id. ¶¶ 4-5). According to the Amended Complaint, defendant MEP also maintains offices in Columbus, Ohio and Columbus, Georgia. (Id. ¶¶ 3, 6). Plaintiff alleges that defendant Morford was a Theater Director for MEP and had minimum contacts with New York, Georgia, and Ohio for jurisdictional purposes. (Id. ¶¶ 9-10).

Plaintiff alleges that in or about December 2009, she was hired by defendant MEP to work as a Database Analyst in Bagram, Afghanistan. (Id. ¶¶ 14, 15). Plaintiff was the only female hired in a group of five people that were hired in December 2009. (Id. ¶ 16). Plaintiff claims that she was told someone would arrive to train her, but the trainer did not arrive until February 2010. (Id. ¶ 18). Plaintiff alleges that she never received proper training and was not always assigned work to do. (Id. ¶¶ 17, 19). When she was assigned work, she did not receive any assistance. (Id. ¶ 21).

---

[1]Citations to "Am. Compl." refer to the Amended Complaint, filed on December 23, 2010.

2

Plaintiff alleges that she was ignored by the Operations Manager, Gil Osmond, and subjected to harassing and discriminatory treatment upon her arrival in Bagram. (Id. ¶¶ 22-23). Plaintiff claims that Osmond made certain derogatory comments based on her gender. He allegedly told plaintiff that "she didn't know anything," and asked why they had not "hire[d] a young female who could learn quickly." (Id. ¶¶ 24-25). Allegedly Osmond told plaintiff to "shut the f— up, go work out, have a nap, go shopping." (Id. ¶ 26). Operations Assistant Manager Andrew[2] also allegedly made discriminatory comments, stating that he could not deal with Muslims. (Id. ¶ 27).

Plaintiff alleges that in March 2010, defendant Morford began approaching her, telling her, "we need to support each other, I really like you, let's get together some time." (Id. ¶ 29). Although plaintiff told Morford she was not interested in getting together with him, he persisted by stating, "you're lonely and I'm lonely," and telling her she was attractive. (Id.) According to the Amended Complaint, sometime later in March, plaintiff went to the office to use Skype and Morford was in the office at that time. (Id. ¶¶ 32, 33). Defendant told plaintiff to take a seat and said, "we are both far from family and with each other." (Id. ¶ 34). He then "grabbed plaintiff and tried to kiss her," touching her "all over her body, including a breast and shoulder." (Id. ¶¶ 35-36). When plaintiff stood up to leave the office, Morford "grabbed her and hugged her, squeezing her breast against his chest, and tried to kiss her on her face and neck." (Id. ¶ 37). Morford apologized and stated, "sorry, this won't happen again, give me another chance to work together." (Id. ¶ 38). The following day, Morford terminated plaintiff's employment. (Id. ¶ 39).

---

[2] The Amended Complaint does not provide Operations Assistant Manager Andrew's full name.

3

Plaintiff filed a report with the Department of Army, Criminal Investigations Command on April 3, 2010, reporting on defendant Morford's conduct. (Id. ¶ 40).

In the First, Sixth, and Eleventh Causes of Action in her Amended Complaint, plaintiff alleges that she was terminated from her employment because of her refusal to engage in sexual activity with defendant Morford, in violation of the NYSHRL, Ga. Code § 45-12-29, and Ohio Law. The Second, Seventh, and Twelfth Causes of Action allege that defendants created a hostile work environment and then terminated plaintiff in furtherance of that hostility, again in violation of the NYSHRL, Ga. Code § 45-12-29, and Ohio Law. The Third, Eighth, and Thirteenth Causes of Action allege gender discrimination; the Fourth, Ninth, and Fourteenth Causes of Action allege religious discrimination; and the Fifth, Tenth, and Fifteenth Causes of Action allege retaliation based on plaintiff's opposition to religious discrimination, sexual harassment, gender discrimination, and hostile work environment, all in violation of the NYSHRL, Ga. Code § 45-12-29, and Ohio Law. Plaintiff seeks back pay, front pay, and interest in the amount of $3,000,000, along with punitive damages, liquidated damages, and compensatory damages for pain and suffering, anxiety, humiliation, physical injury, and emotional distress in the amount of $3,000,000.

## DISCUSSION

### A. MEP's Motion to Dismiss the Claims under Georgia Law

Defendant MEP moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action in the Amended Complaint, which allege violations of Ga. Code § 45-12-29, on the grounds that this

Georgia statute applies only to public employees of the State of Georgia. (Defs.' Mem.[3] at 3-5).

Title 45 of the Georgia Code, entitled "Public Officers and Employees," states that its purpose is to "safeguard all individuals in *public employment* from discrimination in employment," and to "promote the elimination of discrimination against all individuals in *public employment*...." Ga. Code Ann. § 45-19-21 (emphasis added). Defendant contends that not only is there no basis to allege that defendants MEP and Morford are Georgia state public employers, but also, even if they are, Article 19 of the Georgia Code provides that any individual claiming an unlawful employment action pursuant to this statute may only file a complaint with the Administrator of the Georgia Commission on Equal Opportunity. See Ga. Code Ann. § 45-19-36(b)(2011). Thus, it is clear that there is no private right of action under this provision of Georgia Law.

Perhaps in recognition of the futility of these claims, plaintiff, in her Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp."), states that she "does not challenge defendants' motion to dismiss the Sixth, Seventh, Eighth, Ninth, and Tenth causes of action – all premised on Georgia law – previously asserted in plaintiff's Amended Complaint." (Pl.'s Opp. at 1).

Accordingly, it is respectfully recommended that defendants' motion to dismiss the Sixth, Seventh, Eighth, Ninth, and Tenth Cause of Action in the Amended Complaint be granted.

---

[3] Citations to "Defs.' Mem." refer to the Defendants' Memorandum of Law in Support of Their Motion to Dismiss, dated February 15, 2011.

5

B. Morford's Motion to Dismiss

Defendant Morford moves to dismiss the Amended Complaint in its entirety, pursuant to Rule 12(b)(5), on the grounds that he was never served with the Summons and Complaint, and, pursuant to Rule 12(b)(2), because there is no basis for this Court to assert personal jurisdiction over him. (Defs.' Mem. at 5).

1) Service - Standards

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). In addition, it is clear that a court may not exercise jurisdiction over the person of a party who has not been effectively served with process. See Sajimi v. City of New York, No. 07 CV 3252, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011) (holding that "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement for service of summons must be satisfied"); see also Copelco Capital, Inc. v. Gen. Consul of Bolivia, 940 F. Supp. 93, 94 (S.D.N.Y. 1996). As the Supreme Court noted in Henderson v. United States, 517 U.S. 654, 672 (1996), "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." Id. The Second Circuit has indicated that the notice must be "reasonably calculated to provide actual notice of the action." National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 258 (2d Cir.) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)),

6

cert. denied, 502 U.S. 968 (1991). As the Court in Steel Co. v. Citizens for a Better Environment stated: "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." 523 U.S. 83, 94-95 (1988).

It is well-established that "[w]hen the defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show adequacy of service." Blue Ocean Lines v. Universal Process Equip., Inc., No. 93 CV 1722, 1993 WL 403961, at *4 (S.D.N.Y. Oct. 7, 1993) (internal citation omitted); see also Schwasnick v. Fields, No. 08 CV 4759, 2010 WL 2679935, at *2 (E.D.N.Y. June 30, 2010); accord Bey v. U.S. Postal Serv., No. 03 CV 4081, 2005 WL 2923516, at *1 (S.D.N.Y. Nov. 4, 2005). In considering whether a complaint is subject to dismissal under Rule 12(b)(5) for failure to properly effect service, the Court "'must look to matters outside the complaint to determine whether it has jurisdiction.'" Hertzner v. U.S. Postal Serv., No. 05 CV 2371, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007) (citation omitted).

2) Analysis

Defendant Morford claims that he has never been properly served with the Summons and Complaint or the Amended Complaint in this action. (Morford Aff.[4] ¶ 5). In moving to dismiss pursuant to Rule 12(b)(5), Mr. Morford has submitted an Affidavit that states that as of the date of his affidavit, February 15, 2011, he worked for MEP as a consultant; he was formerly Theater Director. (Id. ¶ 1). He states that from December 2009 through December 2010, he was working

---

[4]Citations to "Morford Aff." refer to the Affidavit of Rex Morford, dated February 15, 2011.

7

for MEP in Afghanistan; his home, however, is in Colorado Springs, Colorado. (Id. ¶ 3). He represents that as of December 14, 2010, he was working for MEP in Chantilly, Virginia, and living in Virginia. (Id. ¶ 3). Subsequently, Mr. Morford submitted a Reply Affidavit, dated March 21, 2011, in which he states that since March 4, 2011, he has resided in Colorado Springs, Colorado.[5] (Morford Reply Aff.[6] ¶ 5).

Plaintiff claims that defendant Morford was served on September 22, 2010 when a copy of the Summons and Complaint was left with Brian McCall, Director of Processing Operations at 6298 Veterans Parkway, Suite 3A, Columbus, Georgia. (Morford Aff., Ex. C). A copy of the Summons and Complaint was also mailed to defendant Morford's "last known business address" on October 27, 2010.[7] (Pl.'s Opp. at 5) (citing Pl.'s Opp., Ex. C). Relying on Fed. R. Civ. P. 5(b)(2), plaintiff argues that service of a pleading is sufficient if it is left "'at the person's office with a clerk or other person in charge, in a conspicuous place in the office' or mailing it to the person's last known address. . . .'" (Id.)

Plaintiff's service is clearly insufficient in that there is no evidence that defendant ever worked or resided in Columbus, Georgia. Indeed, in his Reply Affidavit, Mr. Morford represents

---

[5] It is unclear from defendants' submissions where Morford currently works.

[6] Citations to "Morford Reply Aff." refer to the Reply Affidavit of Rex Morford, dated March 21, 2011.

[7] In the documents submitted to this Court, plaintiff does not explicitly indicate where the Summons and Complaint were mailed; the Affidavit of Service merely provides the Columbus, Georgia address at which a copy of the Summons and Complaint was left with Brian McCall and then notes that "Thereafter, copies of the document were mailed prepaid first class mail on 10/27/10." (Pl.'s Opp., Ex. C). If the Summons and Complaint were mailed to the same Columbus, Georgia address at which the copy was left – somewhere defendant never worked or resided – service was clearly insufficient.

8

that he never worked for MEP in its Georgia location and never authorized anyone to accept service on his behalf at that location. (Morford Reply Aff. ¶ 3). Similarly, service by mail at a business address where the defendant never worked is not sufficient to satisfy the requirements of Rule 4(m).

Accordingly, the Court respectfully recommends that the Complaint be dismissed as to defendant Morford for failure to effect proper service.

3) Lack of Personal Jurisdiction

Defendant Morford contends that even if plaintiff could establish proper service of the Amended Complaint, the Court lacks personal jurisdiction over Morford.

As with issues of service, the plaintiff bears the burden of establishing that the Court has jurisdiction over the defendant. Metropolitan Life Ins. Co. v Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996), cert. denied, 117 S. Ct. 508 (1996). However, where jurisdiction is challenged prior to the commencement of "discovery, the plaintiff may overcome the challenge simply by making a good faith pleading" demonstrating the jurisdictional elements.[8] Roland v. Margi Systems, Inc., No. 00 CV 0341, 2001 WL 241792, at *1 (W.D.N.Y. Feb. 28, 2001) (citing Jazini v. Nissan Moto Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998). In making this prima facie jurisdictional determination, courts must construe the pleadings and affidavits and resolve ambiguities in favor of the plaintiff. Id. (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985)).

---

[8]The Court notes that defendants filed their motion to dismiss, containing this challenge to personal jurisdiction, on March 21, 2011. Discovery did not begin until after the initial conference before the undersigned, held on July 12, 2011.

9

"In resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry." Metropolitan Life Ins. Co. v Robertson-Ceco Corp., 84 F.3d at 568 (citing Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990)). To determine whether personal jurisdiction exists, the court first looks to the laws of the forum – in this case, New York – to determine whether jurisdiction exists over the defendant under New York law. See Bensusan Rest. Corp. v. King, 937 F. Supp. 295, 298-301 (S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997). Second, the court must assess whether asserting personal jurisdiction over the defendant "comports with the requirements of due process." Id. at 300-01; see also Savin v. Ranier, 898 F.2d at 306. Due process protects an individual who lacks substantial ties to the forum from being subjected to binding judgments within the jurisdiction. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 567. In the absence of certain minimum contacts with the forum state, the Court may not exercise jurisdiction over a defendant when "doing so would offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310 (1945).

Addressing the first step of the inquiry, plaintiff relies on the New York long arm statute, specifically, CPLR § 302(a)(3)(ii), as the basis for asserting jurisdiction over the defendant. This statute provides in pertinent part:

> (a)[A] court may exercise personal jurisdiction over any non-domiciliary... who in person or through an agent...(3) commits a tortious act without the state...if he...(i) regularly does or solicits business, or engages in any other persistent code of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

10

N.Y.C.P.L.R. § 302(a)(3)(i-ii).[9] Thus, in order to assert jurisdiction under this section, plaintiff must first show that defendant committed a tortious act outside New York and that defendant's tortious activity caused injury to person(s) or property inside New York. Once these two elements are satisfied, plaintiff must show either that: 1) defendant regularly does business in New York, engages in a persistent course of conduct in New York, or derives substantial revenue from commercial activities in New York, see Girl Scouts of U.S. v. Steir, 102 Fed. Appx. 217, 220, No. 03 CV 9087, 2004 WL 1406307, at *3 (2d Cir. June 24, 2004); or that 2) defendant should have reasonably expected the act to have consequences in the state and defendant derives substantial revenue from interstate commerce. See Kernan v. Kurz-Hastings, Inc. 997 F. Supp. 367, 372 (W.D.N.Y. 1998); see also Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 325-26, 402 N.E.2d 122, 124-25, 425 N.Y.S.2d 783, 786 (1980) (noting '[i]t has, however, long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there").

Assuming, without deciding, that the alleged tortious conduct by defendant caused injury in New York, the key issue here is "whether [plaintiff] has successfully demonstrated that either the first or second jurisdictional subset of [N.Y.C.P.L.R.] § 302(a)(3) has been met." Ingraham v. Carroll, 90 N.Y.2d 592, 598, 687 N.E.2d 1293, 1295, 665 N.Y.S.2d 10, 12 (1997). The first option, N.Y.C.P.L.R. § 302(a)(3)(i), "necessitates some ongoing activity within New York

---

[9]Although plaintiff does not rely on N.Y.C.P.L.R. § 302(a)(3)(i) as a possible basis for jurisdiction, the Court addresses its potential application here in the interest of completeness.

State." Id. (citing cases). "Although [N.Y.C.P.L.R. § 302(a)(3)(i)] does not require the quantity of New York contacts that is necessary to obtain general jurisdiction under the 'doing business' test of [N.Y.C.P.L.R. § 301], it does require something more than the 'one shot' single business transaction described in [N.Y.C.P.L.R. § 302(a)(1)]." Id. (citing cases).

Plaintiff could also establish personal jurisdiction under the second option, N.Y.C.P.L.R. § 302(a)(3)(ii), by establishing that the defendant "expects or should reasonably expect the act to have consequences in the state" and derives substantial revenue from interstate commerce. Kernan v. Kurz-Hastings, Inc. 997 F. Supp. 367 at 372. This requirement is "intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere." Ingraham v. Carroll, 90 N.Y.2d at 598, 687 N.E.2d at 1295, 665 N.Y.S.2d at 12. Following the Supreme Court's decision in Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cty., 480 U.S. 102 (1987), it is clear that foreseeability requires an affirmative or purposeful act invoking the protections or benefits of New York law, see id., or evidence that the defendant "'purposefully avails [himself] of the privilege of conducting activities within the forum State.'" Martinez v. Am. Standard, 91 A.D.2d 652, 653, 457 N.Y.S.2d 97, 99 (2d Dep't 1982), aff'd, 60 N.Y.2d 873, 458 N.E.2d 826, 470 N.Y.S.2d 367 (1983) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

The first prong of N.Y.C.P.L.R. § 302(a)(3)(ii) – the foreseeability requirement – "ensures that the defendant has some direct contact with New York State." Ingraham v. Carroll, 90 N.Y.2d at 599, 687 N.E.2d at 1296, 665 N.Y.S.2d at 13. However, the second prong of N.Y.C.P.L.R. § 302(a)(3)(ii) – the substantial revenue from interstate commerce component –

12

"requires no direct contact with New York State." Id. at 598 (internal citation omitted). Instead, it "narrows the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but 'whose business operations are of a local character.'" Id. at 599 (citing 12th Annual Report of N.Y. Judicial Conference, at 342-343 (describing the interstate commerce prong of N.Y.C.P.L.R. 302 § (a)(3)(ii) as requiring a showing that defendant "was engaged in extensive business activities on an interstate or international level"); David D. Siegel, New York Practice § 88 (5th ed. 2011) (describing N.Y.C.P.L.R. 302 § (a)(3)(ii) as a "bigness requirement" designed to assure that the defendant is "economically big enough" to defend suit in New York)).

Even if plaintiff establishes that New York could exercise personal jurisdiction over defendant, plaintiff must also demonstrate that such an exercise of jurisdiction is reasonable and comports with federal due process requirements. See Savin v. Ranier, 898 F.2d at 306. To make this determination, courts consider the following factors:

> 1) The burden that the exercise of jurisdiction will impose on the defendant; 2) The interests of the forum state in adjudicating the case; 3) The plaintiff's interest in obtaining convenient and effective relief; 4) The interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) The shared interest of the states in furthering substantive social policies.

Metropolitan Life Ins. Co., 84 F.3d at 568 (citing Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Solano Cty, 480 U.S. at 113-14).

4) Analysis

In this case, it is clear from plaintiff's Amended Complaint that the conduct and actions

that she alleges Morford engaged in occurred in Afghanistan and not in New York. (Am. Compl. ¶¶ 29-39; Morford Aff. ¶ 2). There is no allegation in the Amended Complaint that Morford's alleged conduct occurred in New York, and indeed, Mr. Morford states in his affidavit that "[a]ny interaction that I had with Plaintiff occurred in Afghanistan. I never interacted with her in New York." (Morford Aff. ¶ 2); see N.Y.C.P.L.R. § 301(a)(2).

Moreover, there is not a single allegation in the Amended Complaint suggesting that Morford's conduct relates to New York in any way, let alone that he "regularly does or solicits business,...engages in...[a] persistent course of conduct, or derives substantial revenue from goods...or services...in the state." See N.Y.C.P.L.R. § 301(a)(3)(i). Indeed, plaintiff acknowledges that she does not know if Morford formerly conducted or solicited business in New York, or formerly worked with employees or agents in New York. (Id. at 6); see also N.Y.C.P.L.R. § 301(a)(1). Plaintiff further acknowledges that she does not know if Morford ever owned, used, or possessed any real property in New York. (Morford Aff. ¶ 6); see N.Y.C.P.L.R. § 301(a)(4). Consequently, if personal jurisdiction over defendant exists in New York, it can only be under N.Y.C.P.L.R. § 301(a)(3)(ii).[10]

Plaintiff claims that: "It is plausible that this Court has Personal Jurisdiction as to

---

[10]The Court notes that it set a discovery schedule in this case that included requests for documents and interrogatories as well as depositions. At a status conference held before the undersigned on September 28, 2011, defendant was directed to provide outstanding discovery by October 18, 2011. (See Docket Entry #41). In response, defendant provided plaintiff with approximately 944 pages of documents related to the case. (See Docket Entry #46). Although the parties disputed who was responsible for printing those documents (see id.; see also Docket Entries #48, 51-54, 56), the Court has not received any indication that defendants failed to respond or fully comply with plaintiff's requests. Since plaintiff has had the opportunity to engage in discovery regarding Morford's contacts with New York, the Court presumes that had such additional jurisdictional contacts surfaced, plaintiff would have cited them.

14

Defendant Morford" (Pl.'s Mem. at 5, 6), contending that the defendant "purposefully directed his activities" at a resident of the forum. (Id. at 7) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985)). Plaintiff argues that since she resides in New York, the impact of Morford's behavior is felt in New York, and, "as Theater Director for defendant Mission Essential Personnel,...[Morford] *may have known* plaintiff resided in New York and that his alleged conduct would cause an impact in New York." (Id. at 6 (emphasis added)). Plaintiff argues that "[i]f defendant Morford had a certain degree of knowledge, belief, or expectation that plaintiff lived in New York and that his alleged conduct would cause an impact in New York that knowledge, belief or expectation may form the basis for holding defendant Morford subject to personal jurisdiction in New York." (Id.)

However, even construing the pleadings and affidavits and resolving ambiguities in plaintiff's favor, see Roland v. Margi Systems, Inc., 2001 WL 241792, at *1 (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d at 57), plaintiff has not provided any support for her theory that Morford may have "had a certain degree of knowledge, belief, or expectation that plaintiff lived in New York." (Id.) Consequently, plaintiff has failed to satisfy the foreseeability prong of N.Y.C.P.L.R. § 302(a)(3)(ii). See Kernan v. Kurz-Hastings, Inc., 997 F. Supp. at 372; see also Roland v. Margi Systems, Inc., 2001 WL 241792, at *3 (finding jurisdiction under New York's long-arm statute over California-based defendant in a sexual harassment retaliation case where the alleged conduct occurred in California, but only when the record demonstrated that foreign defendant had concrete knowledge that plaintiff was a New York resident).

Furthermore, even if this Court found that plaintiff had satisfied the foreseeability prong of N.Y.C.P.L.R. § 302(a)(3)(ii), she has offered no support for the second prong of N.Y.C.P.L.R.

15

§ 302(a)(3)(ii), the requirement that the defendant "derives substantial revenue from interstate or international commerce." N.Y.C.P.L.R. § 302(a)(3)(ii). While defendant MEP may engage in interstate or international commerce, Morford, sued here in his individual capacity, was merely MEP's employee at the time of the alleged incidents and did not engage in commercial activities of his own. Under the circumstances of this case, the commercial activities of MEP may not be imputed to Morford to establish personal jurisdiction under N.Y.C.P.L.R. § 302(a)(3)(ii). See Siegel v. Holson Co., 768 F.Supp. 444, 446 (S.D.N.Y. 1991) (finding no jurisdiction over executive under section 302(a)(3)(ii), as corporate revenue from interstate commerce cannot be imputed to company president); see also Family Internet, Inc. v. Cybernex, Inc., No. 98 CV 0637, 1999 WL 796177, at *8 (S.D.N.Y. Oct. 6, 1999) (explaining that, for the purposes of satisfying the substantial revenue requirement of N.Y.C.P.L.R. § 302(a)(3)(ii), corporate officers may only be subject to personal jurisdiction under an "agency theory" when they both benefit from and consent to the corporation's activities in New York, and possess sufficient control over them) (internal citation omitted).

Moreover, even if plaintiff could establish the basis for New York to exercise personal jurisdiction over defendant Morford under N.Y.C.P.L.R. § 302(a)(3)(ii), she still must demonstrate that it would comport with due process and be reasonable for this Court to assert personal jurisdiction over him. See International Shoe Co. v. Washington, 326 U.S. 310. However, Morford's Reply Affidavit demonstrates that he has no contacts whatsoever with New York. He indicates that he has never worked in New York, never resided in New York, never conducted business within the state, never had a bank account or real property located in New York, and has never had employees or agents in New York. (Morford Reply Aff. ¶¶ 4, 7, 8).

16

Thus, even construing the pleadings and affidavits and resolving ambiguities in plaintiff's favor, see Roland v. Margi Systems, Inc., 2001 WL 241792, at *1 (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d at 57), there is no basis on which to find that Mr. Morford has the requisite minimum contacts with New York that would make it reasonable to compel him to defend himself here. See Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Solano Cty, 480 U.S. 102; International Shoe Co. v. Washington, 326 U.S. 310. New York is a forum far from both his residence in Colorado and his former employment in Virginia.

Accordingly, since the Court finds that plaintiff has failed to even allege a basis on which to subject Mr. Morford to this jurisdiction, the Court respectfully recommends that the motion to dismiss the claims against defendant Morford be granted.

## CONCLUSION

In conclusion, the Court respectfully recommends that defendant MEP's motion to dismiss the Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action be granted; and that defendant Morford's motion to dismiss the claims against him be granted for improper service and lack of personal jurisdiction.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. Section 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either electronically

through the ECF system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 27, 2012

/S/ CHERYL

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York